UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Lisco D. Jeffcoat, ) | |
| ) | C/A No.  4:15-3056-RMG-TER |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| Capt. Carpenter, Lt. Hamby, Sgt. Luten, Sgt. Edens, ) | |
| Dr. James Dorn, and Nurse White, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PROCEDURAL BACKGROUND

Plaintiff, a prisoner proceeding *pro se*, filed this action under 42 U.S.C. § 1983[1] on August 5, 2015. On September 16, 2015, Plaintiff filed a motion to amend his complaint which was granted by court order. (Doc. # 14).[2] In his amended complaint, Plaintiff alleges a violation of his constitutional rights due to medical indifference. Plaintiff is currently

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

[2] The original complaint named only the Anderson City Jail and Anderson City Jail Medical Staff as defendants. On August 24, 2015, a Report and Recommendation was entered recommending that the complaint be summarily dismissed without prejudice as the named Defendants were not "persons" within the meaning of 42 U.S.C. §1983 (Doc. #9). On September 2, 2015, Plaintiff filed Objections to the Report and Recommendation, which identified six individuals allegedly involved in the alleged incident, and requested leave of court to amend his complaint. (Doc. # 11). On September 16, 2015, the Honorable Richard M. Gergel accepted the Report and Recommendation and dismissed the Anderson City Jail and the Anderson City Jail Medical Staff, granted Plaintiff's motion to amend the complaint, and remanded the case to the undersigned.

1

housed at the Alvin S. Glenn Detention Center. At all times relevant to the allegations contained in the complaint, Plaintiff was a federal prisoner housed at the Anderson City Detention Center (ACDC). On May 18, 2016, Defendants Captain Carpenter, Lieutenant Hamby, Sergeant Lutton, Sergeant Edens, and Nurse White filed a motion for summary judgment along with a memorandum and affidavit in support. (Doc. #41). As the Plaintiff is proceeding *pro se*, the court issued an order on or about May 19, 2016, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately.

On May 19, 2016, Defendant James Dorn filed a motion for summary judgment along with a memorandum and affidavit in support. (Doc. #46). As the Plaintiff is proceeding *pro se*, the court issued an order on or about May 20, 2016, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately.

On June 22, 2016, Plaintiff filed one response entitled "Response to Summary Judgment". (Doc. #56). This document is being treated as a response to both motions for summary judgment.

## DISCUSSION

### STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405

2

U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of

Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## FACTS ALLEGED

In his amended complaint, Plaintiff alleges that on June 8, 2015, his bottle of insulin specifically ordered for him on June 1, 2015, could not be located. (Amended complaint). Officer Anderson later found a bottle of insulin that Plaintiff had "previously had months before" from which he received a dose. Id. On the early morning of June 9, 2015, Plaintiff was informed by Officer Sanders that his June 1, 2015, bottle of insulin still could not be located. Id. Later that day at 5:30 pm, Plaintiff was informed by Officer Anderson that the bottle of insulin ordered on June 1, 2015, had been located, and a dose was given to him. Id. Plaintiff was informed that "the nurse" had thrown the bottle into the Biohazard bucket used for needles and, thus, it had not been refrigerated for thirty-six hours. Id. Plaintiff checked

4

his blood sugar level after taking the insulin, and it was 351. At 8:30 pm, it was 451. Id. Therefore, he was taken downstairs by "Officer Ethan" and placed in a holding cell for observation until the nurse arrived. Id. Plaintiff was informed at 9:30 pm that the nurse was not coming to check him but instructed that Plaintiff drink ice water and lay down. Id. At 11:15 pm, Plaintiff's his blood sugar reading was 360. Id. Plaintiff asked to speak to "Sgt. Luten" who asked him over the speaker in his cell what was wrong. Plaintiff told "Sgt. Luten" that he "felt sick, dizzy and nauseated", but "Sgt. Luten" sarcastically told him to have a "goodnite." Id. Plaintiff's blood sugar was 198 on June 10, 2015, after not eating for twelve hours. Id. At 10:15 am, Plaintiff went to the nurse's office, and they checked his blood sugar which read "454 on one monitor and 471 on another." Id. Plaintiff requested that he be taken to the hospital but was told "no". Id. Plaintiff's fiancé called and insisted that he be taken to the emergency department. Id. Plaintiff states that he was taken to the emergency room with a blood sugar reading of 434 where he was given fluids for dehydration and insulin. Id. The emergency room doctor told him that he "should be receiving the insulins I take at home which is Lantas and Novolog and that the insulin I'm taking at the jail is not strong enough for my diabetes. I informed the doctor at the jail of this and was told the two insulins were expensive and they didn't want to get stuck with the medicines if I were to leave the city jail. So I was instructed to take more of the Humilin insulin and a 500 mg metformin tablet." (Doc. # 17, p. 4). Plaintiff asserts that his blood sugar "still runs high." Id. Plaintiff does not request any type of relief in his amended complaint. Id.

5

**LAW AS TO MEDICAL INDIFFERENCE**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain" prohibited by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir.2008) (internal quotation marks omitted).

To show a defendant's deliberate indifference to a serious medical need, a prisoner must allege the defendant knew of and disregarded "the risk posed by" that need. Id. "[A]n inadvertent failure to provide adequate medical care" does not satisfy the standard, and thus mere negligence in diagnosis or treatment is insufficient to state a constitutional claim. Estelle, 429 U.S. at 105–06, 97 S.Ct. 285. Such indifference can be displayed, however, through the response of prison doctors and other institutional personnel to an inmate's medical needs, including ignoring an inmate's serious condition or delaying medically necessary treatment. Id. "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir.2010) (vacating and remanding summary dismissal of complaint alleging three-month delay in dental treatment); see Smith v. Smith, 589 F.3d 736, 738–39 (4th Cir.2009) (finding claim of delay in administering prescribed medical treatment stated an Eighth Amendment claim).

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS (EXCEPT DORN)**

Defendants Carpenter, Hamby, Lutton, Edens, and White (hereinafter Defendants), filed a motion for summary judgment asserting that there is no evidence that they were deliberately indifferent to Plaintiff's medical needs. Defendants admit that the Plaintiff is diabetic and that the insulin obtained specifically for him was misplaced on or about June 8, 2015, but that he was given the proper dose and type of insulin. In support of their motion for summary judgment, Defendants submitted the affidavit of Angela White (White) who attests that she has been a medical assistant for the SCDC for eighteen years and is present at the ACDC Monday through Friday. (White affidavit, doc. # 41-2). On or about June 8, 2015, White received a phone call from Sgt. Michael Edens inquiring as to the location of Plaintiff's insulin. Id. White advised Sgt. Eden that Plaintiff's prescription had been ordered the week prior and that it should be in the fridge in the control room or in the medical room. Id. White 's understanding was that Plaintiff's blood sugar fluctuated throughout the night. Id. Plaintiff was taken to the emergency room the next morning but returned to the jail within a few hours. Id. It was not unusual for the Plaintiff's blood sugar to fluctuate as it did that night. Id. Upon returning to work the following day, White discovered that Plaintiff had been given insulin from the stock supply, rather than the actual bottle with his name. Id. However, the medicine Plaintiff received was the same medication he had been prescribed and posed no harm to him. Id. Also the next day, Plaintiff's bottle of insulin was found in the Sharpe's container. Id. Although the medication was in the original box and included instructions that it could be stored at room temperature for up to 31 days, this medication was disposed of and was not given to the Plaintiff. Id. The Plaintiff has a well-documented history of failure

and/or refusal to comply with medical instructions regarding his diabetes, including checking his blood sugar, taking his medications, and eating as recommended by medical care professionals. Id.

In his response to summary judgment, Plaintiff asserts that the ACDC did not maintain a stock supply of insulin as White attested, but they "found about a half bottle of the same type insulin. This bottle of insulin may or may not have belonged to another inmate that had left the Detention center prior to incident." (Doc. #56). Plaintiff alleges that on June 8, 2015, after taking that insulin, he did not feel well and was dizzy but his complaints were ignored. Id. He alleges his insulin was not found until the afternoon of June 9, 2015, in a Sharps container where it had been for over thirty-six hours. Plaintiff states that he was moved to another cell for observation on June 9 and was later informed the nurse was not coming but instructed that Plaintiff drink ice water and lay down Id. Plaintiff responds that later when he asked to speak to Sgt. Laten, she instructed him over the speaker in his cell to lay down and have a good night. In his response, Plaintiff responds he was called to the nurse's station the next morning for a blood sugar check at which time Nurse White refused his request to go to the hospital. However, Plaintiff contends he was taken to the emergency room after his fiancé called the jail. Additionally, upon returning to the jail, Plaintiff asserts he talked with Dr. Dorn about his medications but was told that the types of insulin he was on prior to incarceration were expensive but the one he was on at the jail was not.

Upon review of the record, Plaintiff fails to present evidence sufficient to create a genuine issue of material fact as to whether Defendants were deliberately indifferent to his serious medical needs. While there is an issue of fact as to whether or not the insulin given

8

to the Plaintiff on June 8, 2015, was from a "stock pile" at the ACDC or from a bottle that may have belonged to anther inmate, Plaintiff admits that he received insulin after his recent ordered bottle was misplaced. Plaintiff admits that he was called to the nurse's station the next morning where he had his blood sugar checked and that he was taken to the emergency room for treatment and released back to the ACDC. Even considering the facts in the light most favorable to the Plaintiff, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied treatment by these Defendants. In other words, Plaintiff's allegations are not for deliberate indifference to medical care but merely a disagreement with treatment. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). Any disagreement between an inmate and medical personnel generally fails to state a claim.

   Furthermore, to state a claim of denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id. Under these principles, the Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against non-medical personnel. As to these named Defendants, Plaintiff only alleged in his amended complaint that "Officer Ethan" took him downstairs to a holding cell for

9

observation until the nurse arrived, that "Sgt. Luten" responded to him over the speaker in his cell but only told him goodnight in a sarcastic tone, and that he requested to "speak with Lieutenant and Sergeant and Captain and still has never spoken to any of them." (Amended complaint).

Additionally, negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989).

Based on the above reasoning, it is recommended that Defendants' motion for summary judgment (doc. #41) be granted.

## QUALIFIED IMMUNITY

Defendants deny that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendants assert that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, they are entitled to qualified immunity.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from

10

> violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. However, even if there was a

11

violation, Defendants are entitled to qualified immunity. The record before the court shows that Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff of which they were aware in the exercise of their respective professional judgments. Thus, the undersigned recommends that summary judgment be granted as to these Defendants.

## MOTION FOR SUMMARY JUDGMENT BY DEFENDANT DORN

Defendant James Dorn[1] filed a motion for summary judgment asserting the allegations of Plaintiff's complaint, even if true, fail to create a genuine issue of material fact regarding any claims under 42 USC §1983 and that he is entitled to qualified immunity.[2] In support of the motion, Defendant Dorn attached his affidavit attesting that he is a Nurse Practitioner by contract at the ACDC medical clinic. (Dorn affidavit, doc. #46-2). Dorn is familiar with Plaintiff and provided medical treatment to him while he was detained at the ACDC. Id. Plaintiff is diabetic and takes insulin. Id. While at the ACDC, he received the appropriate type and dosage of insulin for his condition which is consistent with his prescription. Id. Plaintiff has never been denied the appropriate type or dosage for his condition. Id. Plaintiff was known to be non-compliant with medicine, medical advice, and diet, sometimes refusing

---

[1] Plaintiff addresses Defendant Dorn as Dr. Dorn. However, James Dorn is a Family Nurse Practitioner not a medical doctor. (See Dorn's affidavit, doc. #46-2).

[2] It is noted that there are scrivener's errors in the memorandum referring to some incorrect allegations and naming an incorrect Plaintiff at one point. However, the affidavit in support refers to the correct set of facts and the correct Plaintiff.

to take medicine and neglecting to keep up with his blood sugar levels. Id.

In his response to summary judgment, Plaintiff again only asserts that Dr. Dorn refused to order the type of insulin he was taking at home prior to incarceration but, instead, prescribed a different insulin. Plaintiff does not allege he was denied treatment. (Doc. # 56).

Upon review of the record, Plaintiff fails to present evidence sufficient to create a genuine issue of material fact as to whether Defendant Dorn was deliberately indifferent to his serious medical needs. Plaintiff does not make any allegations as to Nurse Practitioner Dorn other than he refused to order the type of insulin Plaintiff requested. Specifically, Plaintiff alleged in his amended complaint that the jail house doctor stated that the two types of insulin he takes at home are expensive so he was instructed to "take more of the Humilin insulin and a 500 mg metformin tablet." Even if Plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied treatment by this Defendant. In other words, Plaintiff's allegations are not for deliberate indifference to medical care but merely a disagreement with treatment. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). Any disagreement between an inmate and medical personnel generally fails to state a claim.

Furthermore, if Plaintiff is attempting to file a medical malpractice claim, it fails. Plaintiff has not complied with the requirements of S.C. Code Ann. 15-79-110 and 15-36-100 for filing medical malpractice claims. Plaintiff did not file a notice of intent to file suit and

did not file an affidavit of an expert witness prior to filing suit.

## QUALIFIED IMMUNITY

Defendant Dorn denies that he violated Plaintiff's constitutional or statutory rights entitling him to qualified immunity.

As discussed above, the Plaintiff fails to show that Defendant Dorn violated any of his clearly established constitutional or statutory rights. However, even if there was a violation, Defendant Dorn is entitled to qualified immunity. Defendant Dorn did not transgress any statutory or constitutional rights of Plaintiff of which he was aware in the exercise of his respective professional judgment. See Harlow v. Fitzgerald, supra; Wiley v. Doory, supra;  Thus, the undersigned recommends that summary judgment be granted as to Defendant Dorn.

## PENDENT JURISDICTION

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## CONCLUSION

The Plaintiff has failed to show that Defendant Carpenter, Hamby, Lutton, Edens, White and Dorn violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion for summary judgment filed by Defendants Carpenter, Hamby, Lutton, Edens, and White (doc. # 41) be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that the motion for summary judgment filed by Defendant Dorn (doc. #46) be granted in its entirety.

                                            Respectfully submitted,

                                            s/Thomas E. Rogers, III

August 22, 2016                               Thomas E. Rogers, III
Florence, South Carolina                 United States Magistrate Judge

**The parties' attention is directed to the important information on the attached notice.**